HENRY SCHOLTEN, Respondent, v. ST. LOUIS & SAN FANCISCO RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, March 31, 1903.**

Action for Damages: REMOVAL OF RAILROAD SWITCH: MEASURE OF DAMAGES. In a suit to recover damages caused plaintiff by the removal of a railroad switch that had been constructed under an agreement by the parties, the evidence showed that the switch was put in to accommodate plaintiff in shipping apples, and further that while apples had been received in cars on the switch and shipped therefrom, the use of it for that purpose or any other purpose had practically ceased, and that it did not justify the railroad in maintaining the switch. *Held*, that plaintiff was entitled to recover on account of its removal whatever amount had been expended by him in obtaining the switch.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

AFFIRMED.

*L. F. Parker* and *J. T. Woodruff* for appellant.

(1)  "One who refuses or fails to perform the conditions imposed on him by the terms of a contract, and shows no excuse for such refusal or failure can not recover for the breach of the contract by the other party."  The Alida (C. C.), 12 Fed. 343; Baird v. Evans, 20 Ills. (10 Peck) 30; Bishop v. Newton, Id. 175; Schoonover v. Christy, Id. 426; Heaston v. Colgrove, 3 Ind. 265; Morton v. Kane, 18 Ind. 191; Smith v. Railroad, 43 Iowa 239; Golding v. Petit, 20 La. Ann. 505; Coates v. Cunningham, 5 Md. 121; Reynolds v. Railroad, 11 Neb. 186, 7 N. W. 737.  (2)  If construed, as it was by the court below in its instruction to the jury, as a contract permanently (or forever) to maintain the

side track, it would be against public policy, and void. In Railroad v. State ex rel. Town of Tavares, 31 Fla. 482, it was said: "A railroad company can not bind itself, by contract with individuals, to locate and maintain stations at particular points, or to not locate and maintain them at other points. The company must be left free to establish and re-establish its depots wherever the public welfare or wants of the public may require. The same doctrine is held in Holliday v. Patterson, 5 Oreg. 177, in which case the court said: 'A railroad company is a quasi-public corporation, and the public have an interest in the location of their lines of road and depots. An agreement which tends to lead persons charged with the performance of trusts or duties for the benefit of others to violate or betray them will not be enforced.' " Railroad v. Marshall, 136 U. S. 393, 42 Am. & Eng. R. Cas. 637.

*F. M. Wolf* and *O. E. Gorman* for respondent.

(1) "The party who voluntarily puts an end to a contract and prevents the other party from performing it, is estopped from denying that the injured party has not been damaged." United States v. Beham, 110 U. S. 338. (2) Inasmuch as the validity of the contract was not made an issue by the answer, defendant is in no position to ask that it be considered on appeal. Meier v. Proctor & Gamble Co., 81 Mo. App. 410; McDearmott v. Sedgwick, 140 Mo. 182; St. L. A. & M. Ass'n. v. Delano, 108 Mo. 220. (3) The defendant knew the conditions when it made the contract with plaintiff; knew that 140 acres of his farm was in apple orchard; knew that the trees were young; knew, or should have known that there might be failure in crops; and in short, the defendant made the contract with a full knowledge of all the facts. In Railroad v. Flannagan, 3 Am. St. Rep. 679 (113 Ind. 488), the court in the opinion said: "It is said that contracts entered into by rail-

road corporations before their lines are completed, for the transportation of freight after the completion of their lines, are *ultra vires*. We are aware of no authority which sustains this proposition. Upon principle, it would seem that the power of a corporation to make such contracts as are promotive of its legitimate business, and which look to the advancement of the primary purpose for which it was organized, should be liberally construed. The authorities support this view.'' Pierce on Railroads, 499; 1 Wood's Railway Law, sec. 169.

REYBURN, J.—This is an action brought by the plaintiff against the defendant railroad company to recover the sum of $1,200 damages alleged to have been sustained by him by the removal of a switch, side, or spur track, which had been constructed upon defendant's right of way through a farm of plaintiff.

The testimony disclosed that in September, 1897, the plaintiff and defendant entered into a parol agreement by the terms of which plaintiff was to grade the line of a spur track along defendant's railroad on defendant's right of way through plaintiff's farm, and to furnish the cross-ties for such track, and the railroad was to equip with rails, construct and maintain the side track and connect same with its main line, and furnish cars to transport the products of defendant's farm; and that pursuant to such oral understanding the track was completed, the plaintiff performing the grading and furnishing the cross-ties at a total outlay to himself of $60, the railroad building the side track and connecting it with its main line.

The petition was predicated on such agreement and charged the compliance by plaintiff therewith, and the construction and maintenance of the track by defendant until the year 1901, when defendant, without plaintiff's knowledge or consent, tore up said track and converted the cross-ties to its own use. The issues were comple-

ted by a general denial by way of answer on the part of defendant, and the cause proceeded to trial before a jury.

It further appeared in evidence that the principal crop raised by plaintiff was apples, of which, during the year 1897, he shipped about five carloads over this side track, but severe drought had caused light crops during succeeding years until the year 1901, when a very good crop was produced, the major part of which was sold by plaintiff in bulk upon the trees, prior to the removal of the switch or spur track in the fall of 1901; that the total shipments of plaintiff upon defendant's road consisted of the five or six cars shipped during the year 1897, to Springfield, at a cost not exceeding fifteen dollars per car, and no shipments were made during the ensuing years by plaintiff, but during 1899 shipments were made by parties other than plaintiff, the spur track being used by permission of the defendant's representative; no other shipments, whatever, were shown during the period that the spur or side track existed, but plaintiff had received about fourteen carloads of freight at a rate of five dollars per car brought to his premises upon this track.

The only testimony offered on behalf of defendant was that of a single witness, its division roadmaster, who deposed that the grading for the spur track would not exceed ten dollars in value, and the ties furnished by plaintiff were culled ties, about two hundred in number, and worth not more than fifteen cents apiece, and that the keeping of a switch at any point remote from a station involved danger to passing trains, as the switch could not be as carefully supervised as if located near a station, and was in danger of being thrown by trespassers and derailing trains. It further appeared, however, that such peril could be avoided, for at seasons of the year when such switches were not in use, they could be severed from the main line by taking up

the connecting frogs, which was done for two years with the Scholten spur.

At the close of the testimony, defendant asked the court to give an imperative instruction to the jury that the plaintiff was not entitled to recover and the verdict should be for the defendant, which the court refused and gave the following:

"If you find from the evidence that plaintiff made an agreement with the defendant to place a switch track on its right of way near his farm and that in pursuance of such an agreement plaintiff did, with defendant's consent, and by the terms of said agreement, furnish ties and did grading for said switch, then, in the absence of evidence to the contrary, you are to presume that said switch was to be permanent; and if defendant removed the same without plaintiff's consent, plaintiff is entitled to recover the amount expended by him in obtaining said switch, not to exceed sixty dollars."

The jury returned a verdict for sixty dollars, and after unsuccessful motion for new trial defendant has appealed.

The position of defendant appears to be that, in the absence of an express contract affirmatively determining the period of time the switch or side track should be maintained and operated by the railroad company, the law will imply that it should be continued so long only as the amount of shipments offered by the plaintiff, and the earnings therefrom, would justify the railroad in incurring the expense of maintaining and operating the track, including a fair income upon its original cost to the company, and that an interpretation of a parol understanding imposing the obligation upon a railroad to perpetually maintain a switch, regardless of the consideration whether used by the plaintiff for shipments or not, would be harsh and unreasonable.

The defendant contended further that contracts by a railroad, by which it undertook to bind itself to establish side tracks, spur tracks, switches, depots and

like appurtenances at any particular point and permanently maintain them, were void as against public policy. The principle is undoubtedly well established that the first duty of a railroad company, in the location and operation of its tracks and switches, is toward the public and such corporations can not lawfully enter into any agreements disabling them from performing such obligations; the foundation for this doctrine is, that such contracts should not be upheld if shown to be materially injurious to the interests of the public, as mere private benefit must yield to the public welfare and public wants. Where no public interest is affected or concerned, a railroad company may lawfully bind itself to establish and maintain a switch at any designated point for the accommodation and convenience of patrons in the vicinity, shippers or consignees of freight, and the policy of the law above cited does not condemn such agreements and is not applicable to the state of facts herein presented. No considerations of the public welfare are herein involved; the purpose and execution of the contract did not affect or impair the performance of the duties of the railroad company to the public. If it be conceded that by implication the railroad was accorded the right to remove the switch, when its operation had ceased to be profitable and plaintiff had ceased to furnish shipments of freight sufficient to warrant its further maintenance, yet it is but just that the railroad make restitution to plaintiff of that portion of the cost of its construction contributed by him, and this is attained by the verdict of the jury for plaintiff in the amount of the value of the cross-ties furnished by him (which the testimony shows the defendant removed and converted), together with the cost of the grading paid by him.

The judgment is for the right party and is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.